UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22324-CIV-ALTONAGA/Reid

AMERICAN CHOICE
HEALTHCARE, LLC,

       Plaintiff,

v.

COVERYS SPECIALTY
INSURANCE COMPANY,

       Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Coverys Specialty Insurance Company's Amended Motion to Dismiss Count II of Plaintiff's Amended Complaint [ECF No. 34], filed on November 11, 2024. Plaintiff, American Choice Healthcare, LLC filed a Response [ECF No. 38], to which Defendant, perhaps tellingly, failed to file a reply. The Court has considered the record, the parties' written submissions, and applicable law. For the following reasons, the Motion is denied.

## I. BACKGROUND

This action arises from Defendant's alleged failure to reimburse Plaintiff in full under the insurance policy Plaintiff held with Defendant. (*See* Am. Compl. [ECF No. 31] ¶ 1). In 2021, Plaintiff was selected by the Centers for Medicare & Medicaid Services ("CMS") to participate in the Global and Professional Direct Contracting Model Program ("GPDC Model Program"), a "value-based health care program[.]" (*Id.* ¶ 7 (alteration added); *see also id.* ¶¶ 11, 19). The GPDC Model Program was designed to "reduce participants/providers' administrative burden, allowing

them greater flexibility in how they collaborate in delivering patient care, and further rewarding and incentivizing them to improve the quality of patient care." (*Id.* ¶ 12).

The flip side of this, however, is that Plaintiff was exposed "to greater financial risk[,]" as it was "financially responsible for 100% of the cost of the beneficiary's care relative to the CMS-determined benchmark cost." (*Id.*). The CMS benchmark "represents CMS's calculated cost of care of a population of patients, taking into account the amount of risk per patient, based on comorbidities, patient zip code, cost of living in the area, the patient's sex, race, and social determinants of health." (*Id.* ¶ 13). Whether Plaintiff "operate[d] at a surplus or deficit" was "determined by comparing and reconciling the actual performance year costs of providing health care to [Plaintiff's] patients to the CMS-determined benchmark." (*Id.* (alterations added)).

Plaintiff could mitigate their risk in two ways: "(1) by purchasing specific stop-loss insurance and/or (2) by purchasing aggregate stop-loss insurance[.]" (*Id.* ¶ 14 (alteration added)). Specific stop-loss protection could be purchased through CMS or commercially; each individual beneficiary is assigned a deductible, and once the beneficiary's costs exceed the deductible amount, the specific stop-loss carrier covers the rest of the cost. (*See id.* ¶ 14(a); *see also id.* ¶ 15). This kind of protection is designed "to mitigate the risk of a large or potentially catastrophic claim amount of any one member skewing the overall financial performance" of an entity like Plaintiff. (*Id.* ¶ 15). In contrast, aggregate stop-loss protection is only available commercially and covers the total losses for beneficiaries in excess of the CMS benchmark. (*See id.* ¶¶ 14(b); 16).

For the 2021 performance year, Plaintiff purchased both specific and aggregate stop-loss insurance policies using a broker, Risk Strategies. (*See* ¶¶ 21–22). Plaintiff alleges its broker "knew that some insurance companies reduce the aggregate payout . . . by any specific stop-loss payout received . . . whereas others do not." (*Id.* ¶ 22 (alterations added)). Further, "[i]n its

communications with Risk Strategies, [Defendant] represented that it would not reduce [Plaintiff]'s aggregate reimbursement if [Plaintiff] received recoveries based on a separate specific stop-loss insurance policy." (*Id.* ¶ 24 (alterations added)).  Plaintiff relied on this assurance when it decided to obtain an aggregate stop-loss policy from Defendant.  (*See id.* ¶ 25).

Ultimately, Plaintiff purchased an aggregate stop-loss policy from Defendant and a specific stop-loss insurance policy with a non-party insurance company.  (*See id.* ¶¶ 26–27).  At the end of the 2021 performance year, Plaintiff reported "aggregate losses totaling $7,852,035.46, which had to be reimbursed to CMS[.]"   (*Id.* ¶ 20 (alteration added)).   Plaintiff had an $1,800,000.00 deductible with Defendant; after the deductible, Plaintiff alleges Defendant should have paid it $6,052,035.46.  (*See id.* ¶ 33).   Instead, Defendant paid Plaintiff $4,506,712.06, as Defendant reduced Plaintiff's recovery by the amount of specific stop-loss recovery Plaintiff received from its specific stop-loss insurer.  (*See id.* ¶¶ 34, 53). Plaintiff alleges this discrepancy caused it at least $1,545,323.40 in damages.  (*See id.* ¶ 34).

Plaintiff now brings two claims against Defendant: breach of contract (*see id.* ¶¶ 36–48); and, in the alternative, promissory estoppel (*see id.* ¶¶ 49–56).   Defendant moves to dismiss Plaintiff's promissory estoppel claim only.  (*See generally* Mot.).

## II.  LEGAL STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A pleading withstands a motion to dismiss if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  This pleading standard

"does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

### III.  DISCUSSION

Plaintiff brings a claim of promissory estoppel in Count II.  (*See* Am. Compl. ¶¶ 49–56). "Promissory estoppel is a quasi-contract claim that is generally considered an alternative to a breach of contract claim, allowing a party to enforce a promise not supported by consideration." *Martin v. Creative Mgmt. Grp., Inc.*, No. 10-cv-23159, 2013 WL 12061809, at *4 (S.D. Fla. July 26, 2013) (citations omitted).  To sustain a cause of action for promissory estoppel, a plaintiff must plead three elements: "[(1)] that the plaintiff detrimentally relied on a promise made by the defendant, [(2)] that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance on the part of the plaintiff . . . and [(3)] that injustice can be avoided only by enforcement of the promise[.]"  *W.R. Townsend Contracting, Inc. v. Jensen Civ. Constr., Inc.*, 728 So. 2d 297, 302 (Fla. 1st DCA 1999) (alterations added; citation omitted).

Again, Plaintiff alleges Defendant, through its agent, represented that recoveries under a separate specific stop-loss policy would not reduce any reimbursement owed under Defendant's aggregate stop-loss policy.  (*See* Am. Compl. ¶¶ 50–53).  Relying on this representation, Plaintiff purchased Defendant's aggregate stop-loss policy alongside a separate specific stop-loss policy, incurring substantial costs.  (*See id.* ¶ 54).  Plaintiff would not have procured both policies absent Defendant's promise.  (*See id.* ¶ 55).  Defendant's subsequent reduction of its reimbursement — contrary to its prior assurances — caused Plaintiff damages exceeding $1.5 million.  (*See id.* ¶ 56).

Defendant first argues that the promissory estoppel claim should be dismissed because "*equitable* estoppel is a defensive doctrine rather than a cause of action." (Mot. 8 (emphasis added; quoting *Caruso v. Golden Rule Ins. Co.*, No. 13-60405-Civ, 2013 WL 5596030, at *4 (S.D. Fla. Oct. 11, 2013); citation and quotation marks omitted)).[1]  This argument wholly misses the mark, because "promissory estoppel and equitable estoppel are distinct concepts with distinct uses and effects." *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 918 (9th Cir. 2001) (citation omitted). Indeed, the key distinction is that promissory estoppel is used to create a cause of action, whereas equitable estoppel is used to defend against one. *See id.*; *accord Caruso*, 2013 WL 5596030, at *4; *State, Agency for Health Care Admin. v. MIED, Inc.*, 869 So. 2d 13, 20 (Fla. 1st DCA 2004).

Defendant next contends that Plaintiff's allegations fail to set out a promissory estoppel claim. (*See* Mot. 10).  But Defendant does not identify what element Plaintiff purportedly fails to plead. (*See id.*).  In any event, the Court finds Plaintiff's allegations sufficient. (*See* Am. Compl. ¶¶ 50–56 (alleging that Plaintiff relied on a written promise made during negotiations by Defendant's authorized agent — a promise Defendant should have known would induce such reliance — only for Defendant's change in position to cause Plaintiff to serious financial harm)).

Defendant further argues that the policy between the parties is a valid and enforceable contract — a premise Plaintiff does not dispute (*see* Resp. 6) — "which negates a valid claim for promissory estoppel" (Mot. 10).  True, "[t]he doctrine of promissory estoppel is unavailable when there is a written contract between the parties covering the disputed promises." *Hartel v. Unity Recovery Ctr., Inc.*, No. 16-80471-Civ, 2017 WL 1291952, at *4 (S.D. Fla. Jan. 26, 2017) (alteration added; quotation marks and citation omitted).  This is because "[p]romissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

apple in the event it fails to prove breach of contract." *Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So. 2d 924, 928 (Fla. 4th DCA 2002) (alteration added; citation omitted).

"Nevertheless, in certain situations promissory estoppel may be pleaded in the alternative to contract claims." *Richmond Manor Apts., Inc. v. Certain Underwriters at Lloyd's London*, No. 09-60796-Civ, 2011 WL 13175618, at *5 (S.D. Fla. Feb. 28, 2011) (citing *Doe v. Univision Television Grp., Inc.*, 717 So. 2d 63, 65 (Fla. 3d DCA 1998)).  Indeed, Federal Rule of Civil Procedure 8(e)(2) "permits a party to plead alternative and inconsistent claims and theories of recovery." *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006) (citing Fed. R. Civ. P. 8(e)(2)).  That is, in fact, how Plaintiff's Amended Complaint frames the promissory estoppel claim — it is "pleaded in the alternative[.]"  (Am. Compl. 12).

While the parties agree that the insurance policy constitutes an express contract, they dispute whether Defendant's agent's representations are part of it.  (*See* Mot. 9; Resp. 6).  Should those representations fall outside the contract, Plaintiff may still be able to recover under a theory of promissory estoppel.  *See Martin*, 2013 WL 12061809, at *4.  Thus, Plaintiff is permitted to plead both promissory estoppel and breach-of-contract claims in the alternative.  *See Am. Casual Dining*, 426 F. Supp. 2d at 1371; *see also* Fed. R. Civ. P. 8(e)(2).[2]

---

[2] The parties also dispute whether Plaintiff's reliance on Defendant's agent's representations can overcome the principle that ignorance of a contract's terms is no defense.  (*See* Mot. 10–11; Resp. 7–8; *see also Trustees of Carpenters Health & Welfare Tr. Fund of S. Fla. v. Universal Const. Servs.*, 695 F. Supp. 554, 558 n.1 (S.D. Fla. 1988)).  This debate is irrelevant to the issue of whether Plaintiff can plead promissory estoppel, a doctrine that operates independently of any existing contract.  *See Martin*, 2013 WL 12061809, at *4.  Moreover, the Court "has no obligation to consider the terms of the [policy] in ruling on the [Motion], and it declines to interpret or analyze the [policy's] terms at this stage."  *SCCY Indus., LLC v. Jannuzzo*, No. 17-cv-1495, 2018 WL 3657570, at *4 (M.D. Fla. Aug. 2, 2018) (alterations added).

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, Coverys Specialty Insurance Company's

Amended Motion to Dismiss Count II of Plaintiff's Amended Complaint **[ECF No. 34]** is

**DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 19th day of December, 2024.

<u>_Cecilia M. Altonaga_</u>
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:      counsel of record