UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22324-CIV-ALTONAGA/Reid

AMERICAN CHOICE
HEALTHCARE, LLC,

    Plaintiff,
v.

COVERYS SPECIALTY
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Coverys Specialty Insurance Company's Motion to Alter/Amend Judgment, or, Alternatively, Motion for Remittitur ("Alter & Remittitur Mot.") [ECF No. 137] and Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial ("RJMOL & New Trial Mot.") [ECF No. 138], both filed on June 26, 2025. Plaintiff, American Choice Healthcare, LLC filed Responses in Opposition ([ECF Nos. 143 and 145], respectively), to which Defendant filed Replies ([ECF Nos. 153 and 154], respectively). The Court has carefully considered the parties' submissions, the record, and applicable law. For the following reasons, the Motions are denied.

### I. BACKGROUND

Plaintiff is a Florida-based group of physicians that participated in the Center for Medicare & Medicaid Service's ("CMS[']s") 2021 Global and Professional Direct Contracting Model ("GPDC Model") — a program designed to serve Medicare fee-for-service beneficiaries. (*See* Am. Compl. [ECF No. 31] ¶¶ 3, 11, 19). Under the GPDC Model, CMS set a "benchmark" estimating Plaintiff's annual cost of care for Medicare patients in 2021. (*See id.* ¶¶ 12–13). If

Plaintiff spent less than the benchmark, it kept the surplus; if Plaintiff spent more than the benchmark, it owed the excess to CMS. (*See id.*).

Plaintiff mitigated that risk by purchasing two types of insurance policies. (*See id.* ¶¶ 21–22). From non-party HM Life Insurance Company ("HM"), Plaintiff obtained a "specific stop-loss" policy (the "HM Policy"). (*Id.* ¶ 26). The HM Policy applied on a per-patient basis: each Medicare beneficiary had a deductible, and HM reimbursed any amount above that threshold. (*See id.* ¶ 26). From Defendant, Plaintiff purchased an "aggregate stop-loss policy" (the "Coverys Policy" or the "Policy"), which capped Plaintiff's total liability at the CMS benchmark. (*See id.* ¶ 27).

The parties used intermediaries to negotiate the Coverys Policy: Defendant engaged Archway Health LLC ("Archway") as its producer (*see generally* Joint Ex. List [ECF No. 132], Joint Ex., 1 Producer Agreement [ECF No. 132-1]); and Plaintiff retained Risk Strategies Company ("Risk Strategies") as its broker (*see* Am. Compl. ¶ 22).

During negotiations, one of Archway's employees, Vince Micucci, represented that Defendant would not reduce any reimbursements under the Coverys Policy based on recoveries from a separate specific stop-loss insurance policy. (*See* Am. Compl. ¶ 25). Relying on that representation, an employee of Risk Strategies emailed Archway on June 8, 2021 to confirm Plaintiff's intent to bind coverage at specified premium levels, with a deductible of $1.8 million. (*See id.* ¶¶ 43, 55). The email included a statement that "[p]ayment does not take into account or offset for any specific stop loss recoveries" (the "No-Offset Statement"). (Joint Ex. List, Pl. Ex. 6, Micucci-Phillips Emails [ECF No. 132-32] 3 (alteration added); *see also* Am. Compl. ¶¶ 24, 41). Archway forwarded the email to Defendant; and Defendant issued a binder, followed by the Coverys Policy. (*See* Am. Compl. ¶¶ 28–29; *see also generally* Joint Ex. List, Joint Ex. 2, Coverys Policy [ECF No. 132-2]).

The Coverys Policy defines "Policy" to include "Policy Applications" — which encompasses "each application, together with [your agreement] and all . . . other documents submitted to [Defendant] by or on behalf of [Plaintiff] in connection with the underwriting or issuance of this Policy, including any endorsements." (Coverys Policy 5 (alterations added)). The Policy also contains a clause purporting to allow offsets for other insurance:

> **Other Insurance.** This POLICY is excess over, and shall not contribute with, any OTHER INSURANCE. . . . When this POLICY is excess over any OTHER INSURANCE, WE shall not reimburse YOU for any SHARED LOSS AMOUNT which exceeds YOUR actual expenses that are otherwise reimbursable under this POLICY and applicable OTHER INSURANCE.

(the "Other-Insurance Clause") (Coverys Policy 8–9 (alteration added)).

Over the 2021 contract term with CMS, Plaintiff exceeded the benchmark by $7,852,035.46 and owed that amount to CMS. (*See* Am. Compl. ¶ 33). Plaintiff submitted a claim under the Coverys Policy for $6,052.035.46 — the amount it owed to CMS minus the Coverys Policy's $1.8 million deductible (*see id.*) — but Defendant paid only $4,506,712.06. (*See id.* ¶ 34). Notwithstanding Micucci's representation that Defendant would not reduce reimbursements to account for recoveries under a specific stop-loss policy, Defendant insisted that the Other-Insurance Clause allowed it to reduce coverage to account for (1) a $773,456.08 payment Plaintiff received under the HM Policy; and (2) a $771,867.32 deductible Plaintiff paid under the HM Policy. Plaintiff disputed the reduction, and this lawsuit followed.

In the Amended Complaint, Plaintiff asserted two claims for relief: breach of contract (Count I) (*see id*. ¶¶ 36–48); and, in the alternative, promissory estoppel (Count II) (*see id.* ¶¶ 49–56). The parties cross-moved for summary judgment (*see generally* Mots. for Summary J. [ECF Nos. 52, 54]), and the Court denied the motions, explaining that disputed issues of fact precluded summary judgment for either party (*see generally* Apr. 30, 2025 Order [ECF No. 94]).

One key dispute involved whether the June 8, 2021 email from Risk Strategies to Archway became part of the Coverys Policy under its definition of "Policy." That issue turned on two questions: (1) whether Plaintiff submitted an "application"; and (2) whether the email was a document "submitted to Defendant by or on behalf of Plaintiff in connection with the underwriting or issuance of" the Policy. (Final J. [ECF No. 131] 3 (alterations adopted; citation and quotation marks omitted)).[1]

During the parties' three-day jury trial, Defendant asked the jury the second question, but not the first. (*See generally* Verdict [ECF No. 28]; *see also generally* May 19–21, 2025 Minute Entries [ECF Nos. 122, 125–26]).[2] At the close of Plaintiff's case-in-chief, Defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), and the Court denied the motion. The jury subsequently found in favor of Plaintiff and against Defendant on six factual questions related to Plaintiff's claims. (*See generally* Verdict). Notably, the jury found the June 8, 2021 email *was* a document submitted to Defendant on behalf of Plaintiff in connection with the underwriting or issuance of the Policy. (*See id.* 1).

On May 29, 2025, the Court entered Final Judgment, awarding Plaintiff the sum of $1,545,323.40 based on the jury's factual findings and the Court's analysis of relevant legal authority. (*See generally* Final J.). Because the jury found the June 8, 2021 email was a "document submitted to" Defendant, the Court determined the Coverys Policy incorporated the No-Offset Statement via the definition of "Policy." (*Id.* 3 (citations and quotation marks omitted)). That incorporation introduced ambiguity and a potential conflict with the Other-Insurance Clause,

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[2] By choosing not to pose the first question to the jury, Defendant waived its right to a jury verdict on that issue. (*See generally* Verdict); Fed. R. Civ. P. 49(a)(3).

requiring the Court to resolve coverage — and award judgment on Plaintiff's breach-of-contract claim — in favor of Plaintiff. (*See id.* 3–4 (citations omitted)).

Defendant now moves to alter or amend the Judgment, for remittitur, and for a new trial; and it renews its request for judgment as a matter of law. (*See generally* Alter & Remittitur Mot; RJMOL & New Trial Mot.). Plaintiff opposes each request. (*See generally* Alter & Remittitur Resp.; RJMOL & New Trial Resp.).

## II.  LEGAL STANDARDS

***Alter/Amend Judgment.*** Under Federal Rule of Civil Procedure 59(e), a party may move to alter or amend a judgment within 28 days after the entry of the judgment. *See id*. "The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (alteration adopted; quotation marks and citation omitted). "A [R]ule 59(e) motion may not be used to 'relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'" *United Educators Inc. v. Everest Indem. Ins. Co.*, 372 F. App'x 928, 930 (11th Cir. 2010) (alteration added; quoting *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)).

"[T]he moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (alteration added; citation omitted). The decision to alter or amend a judgment is "committed to the sound discretion of the district court." *O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992).

***Remittitur.*** In lieu of a full retrial, a court may opt to reduce an excessive damages award through remittitur. *See Bozeman v. Pollock*, No. 14-60493-Civ, 2015 WL 5016510, at *10 (S.D. Fla. Aug. 25, 2015) (citation omitted). That remedy is appropriate when "the jury's award is

unreasonable on the facts." *Id.* (citation and quotation marks omitted). And if the award is not just unreasonable but unconstitutionally excessive, the court has an affirmative duty to bring it into compliance with due process. *See id.* (citation omitted). Even so, any reduction of the jury's award must come with the plaintiff's consent. *See Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1329 (11th Cir. 1999) ("[N]o judgment for a remittitur may be entered without the plaintiff's consent because the Seventh Amendment prohibits the court from substituting its judgment for that of the jury's regarding any issue of fact." (alteration added; citations omitted)).

***Judgment as a Matter of Law.*** Federal Rule of Civil Procedure 50(b) governs renewed motions for judgment as a matter of law. Under Rule 50, a party may move for judgment as a matter of law at the close of evidence, and if the motion is properly renewed, after the jury has returned its verdict. *See* Fed. R. Civ. P. 50(a)–(b). The standard is exacting: the motion may be granted only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (citation and quotation marks omitted). A court must assess whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998) (citation and quotation marks omitted). All evidence, and reasonable inferences drawn from it, must be viewed in the light most favorable to the nonmoving party. *See id.* (citation omitted).

If the jury returned a verdict, Rule 50(b) authorizes the Court to (1) enter judgment on the verdict, (2) order a new trial, or (3) enter judgment as a matter of law. *See* Fed. R. Civ. P. 50(b). A Rule 50(b) motion may also "include an alternative or joint request for a new trial under Rule 59." *Id.*

***New Trial.*** Federal Rule of Civil Procedure 59(a)(1) permits the court, on a party's motion, to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1) (alterations added). A new trial may be warranted where the verdict runs counter to the great weight of the evidence, *see Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1497–98 (11th Cir. 1987) (citation omitted); where the trial was marred by evidentiary error, *see Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004); or where the jury instructions were legally flawed, *see Stuckey v. N. Propane Gas Co.*, 874 F.2d 1563, 1571 (11th Cir. 1989) (citation omitted). A combination of these or other trial defects may also justify a new trial. *See Deas v. PACCAR, Inc.*, 775 F.2d 1498, 1504–05 (11th Cir. 1985).

Still, such relief is not to be granted lightly. A court should set aside a verdict only when convinced the jury "has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988) (citations omitted). And a court should not "substitute [its] own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." *Torres v. Rock & River Food Inc.*, 232 F. Supp. 3d 1283, 1285 (S.D. Fla. 2017) (alteration added; citation and quotation marks omitted).

### III. ANALYSIS

#### A. <u>Alter/Amend Judgment</u>

In support of its request to amend the Final Judgment under Rule 59(e), Defendant advances two arguments concerning the HM Policy's $771,867.32 deductible. (*See* Alter & Remittitur Mot. 6–9). First, Defendant asserts that the Court committed a manifest error of law by not subtracting the deductible from the Final Judgment because deductibles are not recoverable from insurers. (*See id.* Mot. 6–9). Second, Defendant contends it may offset the HM Policy's deductible — notwithstanding the jury's finding that the No-Offset Statement became part of the

7

Coverys Policy — because the No-Offset Statement does not *prohibit* such an offset. (*See id.* 9–12). According to Plaintiff, these arguments fail because the HM Policy's deductible has no bearing on what Defendant owes under its own Policy. (*See* Alter & Remittitur Resp. 5, 7). The Court agrees with Plaintiff.

Defendant's first argument is a familiar one. In denying the cross-motions for summary judgment, the Court rejected the same theory, noting that Defendant had simply stated self-insurance and deductibles must be exhausted before an insurer's liability begins, without citing any caselaw "applying that proposition as between two separate insurance policies." (Apr. 30, 2025 Order 13 n.7 (citations omitted)).

This second iteration is no improvement. Defendant again insists the HM Policy's deductible should be subtracted from the damages award because an insurer is not responsible for paying a deductible in the insurer's plan. But, once again, Defendant cites no authority indicating an insurer can reduce a reimbursement based on a deductible associated with a *separate* plan issued by a *separate* insurer. (*See* Alter & Remittitur Mot. 7–9 (citing, *e.g.*, *Citizens Prop. Ins. Corp. v. Amat*, 198 So. 3d 730, 732 (Fla. 2d DCA 2016) (reducing final judgment by the $2,500 policy deductible for the single at-issue policy); *State Farm Fire & Cas. Co. v. Castillo*, 829 So. 2d 242, 244 (Fla. 3d DCA 2002) (reducing final judgment by the $500 policy deductible for the single at-issue policy); *McKenna v. Carlson*, 771 So. 2d 555, 557 (Fla. 5th DCA 2000) (setting off a $2,000 deductible for the single at-issue policy (citation omitted)); other citations omitted)).

Certainly, Defendant does not contend it was a party to the HM Policy. (*See* Alter & Remittitur Mot. 11). Defendant concedes, "the HM [P]olicy deductible was [Plaintiff's] cost of

8

doing business with *HM Life* and nothing more." (*Id.* 12 (alterations and emphasis added)).[3] As such, particularly given Defendant's failure to supply any authority for deducting one insurer's deductible from a second insurer's liability, the Court is not persuaded that the HM Policy's deductible is relevant to damages in this case — much less that by not subtracting it the Court committed manifest error.[4] (*See generally id.*).

Defendant next argues that the HM Policy "was not part of the No-Offset Statement" — so the No-Offset Statement, even if incorporated, permits offsetting for the HM Policy's deductible. (*Id.* 12 (emphasis omitted)). Specifically, Defendant contends a deductible is "not a recovery" (*id.* 10 (emphasis omitted)), and thus falls outside the No-Offset Statement's language prohibiting offsets for "any specific stop[-]loss recoveries" (Micucci-Phillips Emails 3 (alteration added)). Defendant adds that "there was no finding of fact by the jury that the $771,867.32 [HM Policy deductible] was part of any communications between Risk Strategies and Vince Micucci[.]" (Alter & Remittitur Mot. 12 (alterations added; citation omitted)).

This argument incorrectly assumes Defendant was permitted to offset for a separate plan's deductible absent an express prohibition in its contract with Plaintiff. That is now how the Coverys Policy operates. (*See generally* Coverys Policy). Instead, "Defendant, as the insurer, has the burden to establish a policy exclusion applies." *E.S.Y., Inc. v. Scottsdale Ins. Co.*, 139 F. Supp. 3d

---

[3] Defendant appears to directly contradict its own argument in several areas of the Alter & Remittitur Motion. (*See generally* Alter & Remittitur Mot.). For example, Defendant states, "[t]he notion that a deductible under one insurance policy (the HM Policy) could be applied to a loss under another insurance policy (the Coverys Policy) is fundamentally unreasonable." (*Id.* 11 (alteration added)).

[4] To the extent Defendant argues the $1,545,323.40 damages award in the Final Judgment *encompasses* the $771,867.32 HM Policy deductible (*see* Alter & Remittitur Mot. 9 (asking the Court to "remove the deductible from the award"), 12 (stating the Court found Defendant "responsible" for "Plaintiff's deductible under a separate insurance policy with HM Life")), it misreads the Final Judgment — which is based only on the *Coverys* Policy (*see* Final J. 4 (awarding Plaintiff "the difference between what it received under the Coverys Policy and what it would have received absent Defendant's breach" (citations omitted)).

1341, 1351 (S.D. Fla. 2015) (citation omitted). And Defendant does not show the Other-Insurance Clause — or any other provision — affirmatively *allows* offsetting for the HM Policy's deductible. (*See generally* Alter & Remittitur Mot.).

To the contrary, the clause — which purports to allow offsetting of "*reimbursable*" expenses under another "applicable" policy (Coverys Policy 9–10 (emphasis added)) — does not apply to the HM Policy's deductible. Defendant stresses the deductible is *not* reimbursable. (*See generally* Alter & Remittitur Mot.). And as Defendant acknowledges, the "jury found that the Coverys Policy and the HM Policy insured different risks" (*id.* 13 n.2) — which means the HM Policy is *not* an applicable policy under the Other-Insurance Clause (*see* April 30, 2025 Order 12 n.6 (explaining the parties "agree that the Other-Insurance Clause cannot apply unless the Coverys Policy and HM Policy insure the same risk" (citations omitted)).[5] [6]

Defendant's request to amend or alter the Final Judgment is denied.

B. **Remittitur**

Defendant alternatively asks the Court to order a remittitur reducing the total damages award by $771,867.32, the amount of the HM Policy's deductible. (*See* Alter & Remittitur Mot. 12–13). This request is procedurally improper. As Defendant acknowledges — while making its meritless remittitur argument, a remittitur is a mechanism for reducing an excessive *jury verdict* — and the jury did not determine damages. (*See id.* 6, 12–13; *see also generally* Final J.); *Johansen v. Combustion Eng'g. Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999) ("A remittitur is a

---

[5] Defendant states, without explanation, that it "disagrees" with this finding. (Alter & Remittitur Mot. 13 n.2). Even so, Defendant echoes the finding in its arguments, asserting the HM Policy insured "a separate type of risk." (*Id.* 13 (footnote call number omitted)).

[6] Moreover, as the Court has explained, to the extent the No-Offset Statement "introduces ambiguity and a potential conflict with the Other-Insurance Clause," Florida law requires resolving coverage in favor of Plaintiff. (Final J. 3 (citations omitted)).

10

substitution of the court's judgment for that of the jury regarding the appropriate award of damages."); *cf. Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1529 n.29 (11th Cir. 1997) ("[Remittitur] is not proper in cases involving bench trials." (alteration added)). Defendant's request for remittitur is denied.[7]

### C. Judgment as a Matter of Law

Next, Defendant renews its motion for judgment as a matter of law, arguing it is entitled to judgment under Rule 50(b) because (1) incorporation by reference is a legal issue that was improperly submitted to the jury (2) there was no legally sufficient basis to find the No-Offset Statement was incorporated into the Coverys Policy under Florida's incorporation by reference doctrine. (*See* RJMOL & New Trial Mot. 10–13; RJMOL & New Trial Reply 3–4). Neither argument is properly before the Court.

As Plaintiff notes, Defendant waived its ability to challenge the Verdict Form through a Rule 50(b) motion.[8] (*See* RJMOL & New Trial Resp. 4–5). Because "any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request" made under Rule 50(a) during trial, "a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004) (citations and quotation marks omitted); *see also WL All. LLC v. Precision*

---

[7] Even if Defendant were disputing a jury verdict, its remittitur argument would fall short: Defendant simply restates the same deductible-related theories it sets forth in its Rule 59(e) request. (*See* Alter & Remittitur Mot. 12–13). Additionally, Defendant once again misreads the Final Judgment by asserting that the Court awarded the HM Policy deductible as damages (*see id.* 13); the Court did not do so (*see* Final J. 4).

[8] Even if not waived, Defendant's argument that submitting incorporation to the jury was error would fail because the Court did not submit that issue to the jury. (*See generally* Verdict; Final J.). The Verdict Form contained a *factual* question relevant to the *legal* issue of incorporation — whether the June 8, 2021 email was a document "submitted . . . in connection with the underwriting or issuance of" the Policy. (Verdict 1 (alteration added)). Based on the jury's finding on that question and the Court's analysis of applicable law, the *Court* found the Coverys Policy incorporates the No-Offset Statement. (*See* Final J. 3).

*Testing Grp. Inc.*, No. 22-10780, 2022 WL 17830257, at *3 (11th Cir. Dec. 21, 2022) (argument based on a new theory waived). At the close of Plaintiff's case-in-chief, Defendant moved under Rule 50(a) on several grounds — none of which challenged the Verdict Form.

Defendant's second Rule 50(b) argument is that the No-Offset Statement cannot be incorporated by reference because the Coverys Policy neither states it is subject to the No-Offset Statement nor sufficiently describes or references the No-Offset Statement. (*See* RJMOL & New Trial Mot. 12–13 (citing *Hurwitz v. C.G.J. Corp.*, 168 So. 2d 84, 86 (Fla. 3d DCA 1964)); other citations omitted)). This argument, too, is waived — Defendant did not raise it during trial under Rule 50(a).[9, 10]

Plaintiff's renewed request for judgment as a matter of law is therefore denied.

**D. Request for New Trial**

Alongside its Rule 50(b) request, Defendant contends it is entitled to a new trial under Rule 59(a) because the Court improperly admitted evidence that "irreparably tainted the verdict[.]"

---

[9] In any event, this argument also fails on the merits. As the Court has explained, a contract "need not invoke a rote phrase or some other magic words in order to effect an incorporation by reference. . . . Rather, it is sufficient if the general language of the incorporation clause reveals an intent to be bound by the terms of the collateral document." (Apr. 30, 2025 Order (alteration added; quotation marks omitted; citing *Microsoft Corp. v. Big Boy Distrib. LLC*, 589 F. Supp. 2d 1308, 1319 (S.D. Fla. 2008))). The plain language of the Coverys Policy — in particular, its definition of "Policy" — reveals an intent for the parties to be bound by all "documents submitted to [Defendant] by or on behalf of [Plaintiff] in connection with the underwriting or issuance of this Policy, including any endorsements." (Coverys Policy 5 (alterations added). And the jury found that the June 8, 2021 email was exactly such a document. (*See* Verdict 1).

[10] To the extent Defendant challenges the jury's finding that the June 8, 2021 email was a "document submitted" in connection with the issuance of the Policy — a preserved issue, but one Defendant does not substantively develop in its RJMOL and New Trial Motion (*see generally id.*) — the challenge fails. Viewing the trial evidence in the light most favorable to Plaintiff, there was certainly a sufficient legal basis for the jury to draw that conclusion. As Plaintiff notes, the evidence — including a recording of deposition testimony from Defendant's corporate representative, Beth Hackett, that the June 8, 2021 email was submitted in connection with the issuance or underwriting of the Policy; the testimony of a Risk Strategies employee, Cathy Sussman, that the email was the only document Risk Strategies submitted with terms necessary to issue the binder and Policy; and testimony that Defendant issued the Binder only one day after the June 8, 2021 email was sent — provided ample support for the jury's affirmative answer to that question on the Verdict Form. (*See* RJMOL & New Trial Resp. 8–9; Verdict 1).

(RJMOL & New Trial Mot. 2 (alteration added); *see also id*. 13–16; RJMOL & New Trial Reply 5–6). According to Defendant, the No-Offset Statement in the June 8, 2021 email is hearsay "with respect to . . . Micucci's state of mind" (RJMOL & New Trial Mot. 13 (alteration added)); other unidentified statements in that email thread made by "non-parties who did not testify at trial" are hearsay; and the email itself is parol evidence (*see id.* 13–16). According to Plaintiff, Micucci's statements to Sussman are not hearsay because they are an opposing party's agent's statements, and the email is not parol evidence because it is part of the contract. (*See* RJMOL & New Trial Resp. 10). The Court agrees with Plaintiff; Defendant does not persuade that any evidence was improperly admitted.[11]

First, Defendant's argument that the No-Offset Statement was hearsay is misplaced. Defendant does not explain why it believes this statement — made by Cathy Sussman (*see* Sussman Micucci-Phillips Emails 6) — was admitted for *Miccuci*'s state of mind (*see* RJMOL & New Trial Mot*.* 13; *see also generally id.*; RJMOL & New Trial Reply). Even if it was, it would not be hearsay, because a statement is not hearsay if not admitted for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). The statement was admitted to show Sussman made an order or a request that the Coverys Policy not offset for specific stop-loss recoveries, and therefore is not hearsay because "to a large degree, [it] is not even capable of being true or false[.]" *United States v. Hart*, 841 F. App'x 180, 182 (11th Cir. 2021) (alterations added; citation omitted).

---

[11] Defendant also argues that the June 8, 2021 email and other, unspecified communications between Micucci and Sussman were improperly admitted because they were not authenticated. (*See* RJMOL & New Trial Mot*.* 4, 13; RJMOL & New Trial Reply 6–7). This argument is not properly raised; at trial, Defendant never objected on authentication grounds. *See Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005) (explaining that Rule 59 is not a vehicle to "relitigate old matters, raise argument[,] or present evidence that could have been raised prior to the entry of judgment" (alteration added; citations omitted)). Nor does Defendant explain why the purported lack of authentication resulted in prejudice.

As for Micucci's statements, Defendant does not identify which of his statements in the June 8, 2021 email thread it objects to, much less why their admission resulted in prejudice. The thread contains multiple statements from Micucci — none of which was dispositive to Plaintiff's breach-of-contract claim. (*See generally* Micucci-Phillips Emails).

In any event, Plaintiff is correct that a hearsay exemption applies to Micucci's statements. Under Federal Rule of Evidence 801(d)(2)(D), an out-of-court statement is not hearsay if offered against an opposing party and made by the party's agent or employee on a matter within the scope of that relationship and while it existed. *See id.* Micucci's statements satisfy this standard. They were admitted against Defendant; Micucci was Defendant's agent during the negotiation period; and the statements fall within the scope of that agency relationship. While Defendant has never disputed it "cloaked Micucci with apparent agency to some extent[,]" (Apr. 30, 2025 Order 15 (alteration added; citation omitted)), the jury's finding that "Micucci had authority to make representations to Cathy Sussman regarding not reducing the aggregate payout by recoveries received on a specific stop loss policy" forecloses any doubt that Micucci was Defendant's agent for the purpose of negotiating the Coverys Policy. (Verdict 1).

Finally, Defendant's argument that the June 8, 2021 statement is parol evidence because it was not part of the Policy simply repackages Defendant's Rule 50(b) argument, which the Court has already deemed insufficient. Defendant has failed to establish any ground warranting a new trial.

### IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant, Coverys Specialty Insurance Company's Motion to Alter/Amend Judgment, or, Alternatively, Motion for Remittitur **[ECF No. 137]**; and its Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial **[ECF No. 138]**

14

are **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 4th day of September, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record